FILED & ENTERED

OCT 28 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Ateco Inc<br><br>Debtor(s). | CHAPTER 11<br><br>Case No.:  1:10-bk-22623-MT<br>Adv No:   1:11-ap-01198-MT |
| ATECO, Inc<br><br>Plaintiff(s),<br>v.<br><br>John F Hebb<br><br>Defendant(s). | **MEMORANDUM OF DECISION RE: (1) HEBB SPOLIATION MOTION; (2) ATECO MOTION TO EXCLUDE HEBB DOCUMENTS; AND (3) COURT'S ORDER TO SHOW CAUSE RE PRETRIAL COMPLIANCE**<br><br><u>Hearing</u>:<br>Date:         October 4, 2013<br>Time:        9:00 a.m.<br>Courtroom:  302 |

    Friday, October 4, 2013, was originally reserved for a long awaited trial in a routine fee dispute now spanning ten years.  The Law Office of John F.L. Hebb ("Hebb") filed a claim in this bankruptcy case, claiming $543,822.97 in attorney's fees and contractual interest owed from an earlier state court action (the "Hales Litigation.") and $1,087,645 in compensatory damages for a "tort claim."  <u>Proof of Claim 4-1</u>, filed by John Hebb.  Because of unexpected disputes over the pretrial turnover of evidence and exhibit books, the trial was converted to an evidentiary hearing to resolve those discovery and pretrial disputes on the following issues:

-1-

1. A motion by creditor Hebb to dismiss debtor's objection to his claim based on Debtor's alleged spoliation of evidence needed for trial;
2. A motion by debtor Ateco to strike Hebb's remaining fraudulent inducement claim because of violations of the pretrial order and submitting a false proof of service;
3. The court's Order Directing Parties to Comply with the Pretrial Scheduling Order and Notice of Potential Sanctions.

## I.    Background

Some background is relevant to understanding the context of these issues. On June 27, 2012, the Court determined that the Federal Arbitration Act did not apply and that Hebb had waived any right he may have had to enforce any arbitration agreement with Debtor (the "OSC Memorandum," ad.pro. doc.no. 34). After a denial of a Motion for Reconsideration, Hebb appealed (the "OSC Appeal") to the Bankruptcy Appellate Panel for the Ninth Circuit (the "B.A.P."). Over the next year, the B.A.P. denied Hebb's Emergency Motion for Stay Pending Appeal and set oral argument on the OSC Appeal for June 20, 2013.

In the meantime, this Court attempted to make progress on resolving Hebb's claim so that the Chapter 11 case could proceed. On September 9, 2012, the Court held a hearing on Debtor's Motion for Summary Judgment. At that hearing, Hebb stated his emphatic belief that the issues could not be decided on a motion for summary judgment.[1] On November 6, 2012, this Court granted summary judgment in favor of Ateco as to all claims but the fraudulent inducement claim. Further briefing was requested on just that one issue and a schedule set for any additional summary judgment motions. Hebb then filed a pleading on December 19, 2012 declining to file any motion for summary judgment as to "debtor's fraud and tortious conduct, because such claim involves disputed issues of material fact" and again stating: "a trial will be necessary." Hebb's Response to Court's 11/6/12 Scheduling Order, (bankr. doc. no. 233).

On March 15, 2013, this Court held hearings on several continued matters, including a motion to dismiss the bankruptcy case filed by Hebb and Debtor's Supplemental Motion for Summary Judgment. Hebb again stressed that, while he was open to mediation, he believed that a trial was necessary. Supp. Mot. for Summ.J. Hr'g Tr., 26:1-18 (ad.pro. doc. no. 64). Thus, it

---

[1] Hebb stated: "There has to be a trial and the assessment of credibility testimony, and the cases that the opposing party has cited, those are trial cases and not summary judgment motions." Mot. for Summ.J. Hr'g Tr., 20:15-18 (ad. pro. doc. no. 50).

was clear to Hebb at many stages over the last year and a half that he needed to marshal all evidentiary material to prove his claim.

### A. Appeals

The B.A.P. affirmed this Court's ruling that there would be no arbitration on July 15, 2013,[2] although this Court and the B.A.P. made it clear long before then that trial was not stayed. On July 30, 2013, the Court held a pre-trial conference to integrate unilateral proposed pre-trial orders submitted by both parties. At the July 30, 2013 hearing, Hebb indicated that he intended to appeal the B.A.P. Ruling and orally requested a stay of the forthcoming trial pending the appeal. Pre-trial Conference. Hr'g Tr., 11:5-19 (ad.pro. doc. no. 80). Hebb then stated that, if the Court were to deny his request for a stay, he would seek a stay of the trial pending appeal from the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit"). Id. The Court denied Hebb's oral request for stay pending appeal. Id. at 11:17-19. The Court then set forth dates for pre-trial briefing, exchange of exhibit books, and the entry of the pre-trial order, which were later included in the Pre-Trial Scheduling Order entered on August 2, 2013 (the "Scheduling Order," ad.pro. doc. no. 73). Among other dates, the Scheduling Order required the parties to exchange hard copies of exhibit books by August 30, 2013 and specified that the Local Bankruptcy Rules applied to the proceeding. Id.

Thereafter, on August 14, 2013, Hebb filed a Notice of Appeal of the B.A.P. Ruling to the Ninth Circuit (case no 13-60097). On August 26, 2013, a mere four days before the exhibit book exchange deadline and *nearly a month after disclosing his intention to do so*, Hebb filed an "Emergency Motion to Stay Lower Court Action" (the "Emergency Stay Motion," Ninth Circuit case no. 13-60097, doc. no. 4). In the 1663 page Emergency Stay Motion, Hebb made the following argument, among others, in the section entitled "DETAILS BEHIND REASON FOR STAY REQUEST":

> The second deadline, for much more onerous arbitration-inconsistent work and expense throughout the week of 8/26/13 in the production of multiple copies of exhibit books, all made expressly subject to the Local Bankruptcy Rules by the Pre-Trial Scheduling Order is Friday 8/30/13.
> …
> To avoid extensive preparation costs, efforts and time involved in meeting the next of several future deadlines, namely the prior preparation to meet the next deadline of

---

[2] The "B.A.P. Ruling," adversary proceeding. doc. no. 78.

> 5pm Friday 8/30/13, wholly undercutting the parties'
> mandated and protected rights and benefits under both the
> FAA and CAA, creditor appellant requests a response on
> this stay request by or before Wednesday morning 8/28/13,
> or as soon thereafter as possible for the Court.

Emergency Stay Motion, 4:15-19; 5:1-6 (emphasis in original).

On August 28, 2013, Debtor filed an opposition to the Emergency Stay Motion and, later that same day, Hebb filed a response to Debtor's opposition.[3] On August 29, 2013, the Ninth Circuit denied the Emergency Stay Motion and confirmed that "[t]he briefing schedule previously established shall remain in effect."[4]

### B. Pretrial Instructions

In fact, as early as March 15, 2013, Hebb was instructed by the Court to begin preparing his exhibits in preparation for the trial that was supposed to have been held on or about June 21, 2013:

> And then you'll need to start working on your exhibit
> notebooks because I'll need every exhibit numbered.
> Plaintiff take 1-100. And then Defendant could be 101 to
> 200. And you'll need to have a copy for the other side, the
> witness stand, and me. So that will be your copy, plus
> three … for all exhibits."

Supp. Mot. for Summ.J. Hr'g Tr., 39:11-18 (ad.pro. doc. no. 64).

Hebb was again instructed on how to organize his exhibits at a hearing held on May 15, 2013. At the hearing, the Court, Debtor's counsel Krause and Hebb had the following exchange:

> Court:    Mr. Hebb, the one issue that I had … is that in the first
> group of exhibits, you had all of your emails listed, and
> then referenced another document. … I want to set up a
> very clear exhibit list, so there is no confusion as to what
> we're talking about. Instead of referring to "email on such-
> and-such a date, that says to 'so-and-so from so-and-so'", I
> want it to say, "exhibit 1; exhibit 1(b); exhibit 1(c),"
> because otherwise it's going to be an impossible record. …
> I'm going to set up some deadlines for actually putting the

---

[3] Debtor complains also that it was not properly served with these pleadings as was represented in the proof of service filed with the Ninth Circuit, demonstrating a pattern by Hebb. *See* Ninth Circuit case no. 13-60097, doc. no. 6. As the current motion can be resolved without an additional inquiry into a record not before this court, this will not be addressed or resolved further here.

[4] Order Denying Emergency Stay Motion, Ninth Circuit case no. 13-60097, doc. no. 8.

|         |                                                                                                                                                                                                                                                                                                                                                                                                                 |
|---------|---------|
| Krause: | We've already provided, in that vein, we've already provided copies of all of the exhibits that we think we might need and I just want to reiterate that we've not gotten one document with regard to exhibits from Mr. Hebb and he's asking us to look at some 5000 pages of emails and, um, you know, we've never gotten… he says oh, somewhere it's been filed but we would ask that he have to provide hard copies of whatever exhibit he wants so we can take a look at it and we can find out if it is an authentic document, those kinds of things. |
| Hebb:   | Your Honor, um…I, uh… of course we are going to provide him hard copies. The nine volumes that I wheeled in here one day… |
| Court:  | Right   |
| Hebb:   | …those complete, as I said at the time, and in previous pleadings prior to that, they were given a complete set, all enumerated, nine volumes, all labeled, etcetera, earlier, they have that. And I would also ask, since it is a voluminous exhibit, that under Federal Rule of Evidence 1006, Summary of Voluminous Documents, that, uh… I would propose that I do a summary of those, in addition, of course, to any specific ones that I would put in as numbered exhibits and under Federal Rule of Evidence 661(a)(1), providing for the Court Designing Procedures Effective for Determining the Truth, I would take that effectiveness to include efficiently and reasonable expenses. These… those, uh… it's actually 10,000 pages of emails, and those don't include the attachments, but they refer of course to attachments, those are all hard copies. At the time I didn't have those on computer. They've got a complete set, numbered. I have a complete set and there is no need, of course, for the Court to look at them all. As I said at the time I suggested, or requested, that lodge them in the prior partial summary judgment proceeding, that the bulk of them would be just for the mere sight of them and for any sampling. Similarly, the records, to the extent that they have preserved the records, rather than spoliated what |

exhibit books together and turning them over, so that there is no doubt at trial that each side saw what you're talking about and it's not a stack of two thousand pages that you have to wonder which one page is going to be discussed at trial.

-5-

|   |   |
|---|---|
| | records they did produce at some point, that those be brought in as a bulk for the same purpose: as to see the amount of work done. Since, particularly since in all these matters they allege that no work was done, Hebb's office did nothing, etcetera. That the Court see that bulk, as the trier of fact see it, and addition sampling is available. I don't see that there would be any purpose in the extraordinary expense of making copies of that. Any specific documents, of course, you know a particular email, a particular pleading, that would be a numbered exhibit… |
| Court: | Let me give Mr. Krause a chance to respond to that. |
| Krause: | Yeah, first off is that I'd just remind the Court that I was not the state court counsel, so I do not have these volumes and these documents that he's talking about. We'll stipulate that there was lots of work done by the Gutierrez firm, and that there may have been some work done by Mr. Hebb, but to look at the volume of documents and to say that that represents his body of work is a misrepresentation to the Court. So, if he wants, uh, to specifically put things that have his name on it, you know, and we get a chance to see what those documents are, I don't have a problem. But for him to say that we have these – *we do not have them*. |
| Court: | Ok, well, here's the thing: you have a burden of proof to prove what exactly was fraudulently induced. *I am only going to read a specific email with a specific exhibit number that is highlighted through testimony at trial. I am not going to read 10,000 pages…* |
| Hebb: | *Sure* |
| Court: | …so there is no value in me looking at 9-10 notebooks and saying "oh, that's lots of work" because unless I read through every one of those pieces of paper, I don't know if that's good work, bad work, useless work, real work, no work, or copies of faxes that came from the local diner. I mean, there is just no way for me to know that without looking through every notebook. So that's useless. |
| Hebb: | That's why I use the verb, or the gerund, "sampling", a traditional way to look through voluminous documents is to look through for sequence, general sense, any gaps, any strikingly odd. And also, anyone experienced in litigation knows that the bulk of material that has to be looked through and reviewed, just like in discovery proceedings, you know, that requires work, whether you're in charge of |

-6-

> it or not. If you're counsel, this is part of your responsibility.
>
> Court: Mr. Hebb, I review probably… 100-200 fee applications every year. In ten minute increments, I see how people back up their work, or don't. I was a litigator for twenty years. I understand there is lots of work in litigation, some of which shows up in notebooks of documents, some of which doesn't. You're going to have to testify to what work was done. But what work was done here we're not even going to get to until we have proof of fraudulent inducement. This is not a trial on attorney services, in the traditional sense. It's whether there was fraudulent inducement. *So, you're going to have to point to very specifics*.
>
> …

The Pretrial Order (hereinafter referred collectively with the Pretrial Scheduling Order as the "Pretrial Orders") was then entered on September 11, 2013, stating: "Attached is a list of exhibits intended to be offered at trial by Hebb and Debtor, other than the exhibits to be used for impeachment only. No other exhibits will be permitted as part of a party's case in chief." Pretrial Order, bankr.doc. no. 302.

### C. The Nine-Volume Set of Email Correspondence

At one point early in the pretrial hearings, Hebb brought nine black notebooks to court and explained that they were all of the email correspondence from 2004 to 2008 related to Ateco. Hebb states that the emails are individually numbered 1 to 2306. It is not clear if the page count is also 2306 or higher, but there is no dispute that the set is voluminous. Hebb has repeatedly referred to this nine-volume set of binders as proving his fraudulent inducement claim. He attempted to file all of them originally as part of his late response to debtor's motion for summary judgment in August 2012 and, following a phone call to the clerk as to how to do it, was told he needed to select specific emails and identify them individually and explain their relevance. See Order re Filing of Pleadings, Papers, Evidence and Other Documents related to Motion for Summary Judgment (bankr.doc. no. 201, August 17, 2012). The voluminous emails were not included in the MSJ papers.

The trial exhibit book then provided to debtor and the court contains a tab for "Exhibit 1." Behind that tab is simply one page reading:

> "Group exhibit: Emails numbered 1- 2306 (dated 10/16/02-9/25/08), with prefix added for introduction at trial, e.g.: Exhibit '1-1111'"*[to be lodged with Court at trial; debtor previously given a full set of these emails numbered 1-2306, and dated 10/16/02-9/25/08]"

Hebb has filed as part of his "Supplement to Creditor's Motion to Dismiss for Spoliation" (doc. No. 318, filed Sept. 30, 2013), an unauthenticated email chain showing that a nine-volume set of emails was copied by Ateco's former counsel, Michael Velthoen, in February 2009 during the state court litigation. Velthoen substituted out of the Superior Court case by April 2009. No one has ever explained what happened to that copy, but Krause states that he does not have it.

Certain emails from these volumes appear to have been culled out in 2009 by prior counsel because Hebb states that individual emails as part of Ateco's trial exhibits have markings from his multi-volume set.

## II.     The Pretrial Evidentiary Motions

Hebb had raised numerous times his contention that Peter Petrovsky, President of Ateco, and his state litigation attorney, Alejandro Gutierrez of Hathaway Perrett Webster Powers Chrisman & Gutierrez (hereinafter referred to as "Gutierrez" or the "Hathaway Firm") destroyed evidence. The plan was that the lengthy pretrial hearings had resolved the exhibits and witnesses for trial, and the spoliation claim would be resolved as part of trial testimony since it was intertwined with Hebb's allegation of a conspiracy between Ateco and its former counsel. Because it became clear that the trial would be disjointed and confusing without a pretrial resolution of these matters, a hearing was held on October 4, 2013 on just those matters.

### A.     Spoliation Motion

Hebb moves to strike Ateco's objection to his claim because neither Ateco nor the Hathaway law firm produced records he requested. Hebb requested extensive records as part of the Superior Court lawsuit over his fees.[5] Gutierrez stated in a declaration made with regard to the Superior Court lawsuit that he has made a diligent search and reasonable inquiries in an attempt to locate the documents both in his office files and on his computer. Gutierrez stated that

---

[5] It appears that these records were requested as part of Law Office of John F.L. Hebb v. Ateco; Petrovsky; and DOES 1-10 in Superior Court case no. SC 098 275 before the case was supposed to go to arbitration, and that the discovery referee ordered that Petrovsky and Gutierrez submit declarations attesting to what search they had made for the requested records. The full record of the precise discovery request and any transcript of that discovery hearing have not been provided.

-8-

Petrovsky had requested that he make an electronic data disc containing all of the email communications between Gutierrez and Hebb regarding the Hales Litigation. <u>Declaration of Alejandro Gutierrez re Supplemental Responses to Demand for Production of Documents</u>, Hebb's Trial Ex. 3, 2:22-24. Gutierrez stated that sometime in 2009, his computer malfunctioned and he was unable to retrieve any data stored on it. <u>Id.</u> Gutierrez stated that, at that time, he did not keep paper copies of emails, and that when he experienced the computer malfunction, he lost all record of any correspondence, including all emails, for which a hard copy had not been printed. <u>Id.</u> at 2:25-27.

Petrovsky also testified that he had given Hebb everything he had and that he did not have copies of anything on the computer anymore. Petrovsky gets a new computer every one or two years and does not back up his email files. By 2010, he just could not locate any notes or emails from the Hales Litigation. Petrovsky did not think Gutierrez sent him any emails without copying Hebb.

Hebb did not call Gutierrez at the hearing and stipulated to the admission of his declaration. Petrovsky then testified, and after adopting his previous declarations on file as his direct testimony, was cross-examined by Hebb. Hebb then testified that he never received a single note or email from Petrovsky or Ateco in response to his discovery request. Hebb was corresponding with Petrovsky and Gutierrez regularly from 2004 through 2008. Hebb believes Gutierrez was corresponding with Petrovsky, and he has the emails where he was included on those communications. He believed that there were communications where he was not copied, although he did not provide any specific details about when they were likely to have been corresponding without copying him between 2004 and 2008. Hebb requested that the Court take judicial notice that it is inconceivable that Gutierrez and Petrovsky would not have emails and notes that they did not turnover.

On cross-examination, Hebb stated that there were 2300 emails that he did have copies of and that he got any emails on which he was copied. Hebb stated that he believed Petrovsky and Gutierrez conspired to make sure Gutierrez got paid his fees at Hebb's expense. He believes this conspiracy started in July or August 2004 and built thereafter. While it is still unclear which specific items he believes were relevant, it appeared from his argument that Petrovsky's notes about the case, emails and original depositions from the case are the evidence he seeks.

Steven Krause ("Krause"), current counsel for Ateco, testified that he never received Gutierrez's files. He did receive some files from another Ateco attorney, T. Randolph Catanese,

but did not get all of them and did not ask for access to his files. As Catanese was to have handled any litigation and Krause was originally just supposed to handle the bankruptcy case, he did not see the need to take possession of voluminous state court litigation files. No other witnesses were called by either side.

1. *Spoliation requirements*

A party seeking an adverse inference instruction (or other sanctions) based on the spoliation of evidence must establish the following three elements: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a "culpable state of mind" and (3) that the evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. Aqua Connect v. Code Rebel, LLC, 2013 WL 3820544 (C.D. Cal. July 23, 2013); Reinsdorf v. Skechers U.S.A., Inc., 2013 WL 3878685 (C.D. Cal. July 19, 2013); Bobrick Washroom Equip., Inc. v. Am. Specialties, Inc., 2012 WL 3217858 (C.D. Cal. Aug. 8, 2012); Surowiec v. Capital Title Agency, Inc., 790 F.Supp.2d 997, 1005 (D.Ariz.2011). The moving party has the burden of demonstrating sanctionable conduct and prejudice. Rev 973 LLC v. Mouren-Laurens, 2009 WL 273205 (C.D. Cal. Feb. 2, 2009).

The purpose of any sanction is *not* to punish but to restore the position of the moving party and to deter spoliation of evidence. Accordingly, sanctions should not put the moving party in a better position than he would otherwise have been had he obtained the requested discovery, and should be proportionate to the offending party's misconduct, if any. Williams v. Russ, 167 Cal. App. 4th 1215, 1223 (2008). The sanction imposed "must be the least drastic available to adequately mitigate the prejudice" suffered by the opposing party. Bobrick Washroom Equip., Inc. v. Am. Specialties, Inc., 2012 WL 3217858 (C.D. Cal. Aug. 8, 2012). A sanction of dismissal is "harsh" and requires courts to consider the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006).

2.    *No Spoliation Shown*

While Hebb insists on dismissal of Ateco's claim objection based on this alleged spoliation, he has not proven even one element of a spoliation claim. First of all, Hebb introduced no evidence that there was any obligation of Petrovsky or Gutierrez to preserve the notes and emails that he seeks. The items requested were from 2004 to 2008. As best as can be determined from the motion and evidence provided, Hebb did not request these items until sometime in 2010 when the parties were gearing up for trial or arbitration in the fee dispute litigation. The underlying Hales litigation had been essentially completed, and Gutierrez was no longer concerned with the case or retained by Ateco. Hebb has not pointed to any order or any legal duty these parties had to maintain all files from a four year litigation (even though Gutierrez did attempt to maintain his email records but lost all records from that time period due to technical problems.)

Secondly, Hebb has not shown that anything was destroyed with a "culpable state of mind." Petrovsky turned numerous boxes of items over to Hebb,[6] sat through depositions and hearings, and addressed the issue in the state court proceeding Law Office of John F.L. Hebb v. Ateco, et al. Petrovsky even picked up some litigation files from Catanese recently and produced them to Hebb. Hebb admits that he sat in Catanese's office going through them. Gutierrez explained clearly how he lost all electronic records through a computer failure, not only records for the Hales Litigation but *all records for the period of time in question*. Declaration of Alejandro Gutierrez, Hebb's Ex. 3, 2:24-27. Gutierrez's statements have not been impeached, and the court has no grounds to believe his explanation for the loss of his files is not credible. Petrovsky was credible that he had made a thorough search and did not destroy any files. No reason has been supplied to believe this entire loss of all of their electronic files was intentional or done with a culpable state of mind other than Hebb's request to take judicial notice that such a loss is inconceivable. The Court declines to take such judicial notice.

This is not a situation where the party seeking the evidence had no contact or knowledge of its adversary during the time period in which evidence allegedly was destroyed. Hebb, Petrovsky, and Gutierrez discussed payment of fees explicitly and Hebb was copied on those emails (*see* e.g., Hebb's Trial Ex. 22; 24-27; 29-30; 32-33; 35; 45-47; 50-53; 57; 5960; and 63). Despite an inquiry in the state court litigation, a deposition, and an opportunity for cross-

---

[6] A photograph at the back of the declarations shows 9 banker's boxes related to this litigation. Hebb's Trial Ex. 2, Bates no. 15.

-11-

examination here, he did not point to any specific facts tending to show intentional spoliation. If evidence were spoliated, what would such evidence likely be? What is there to show that it ever actually existed?

Volumes of evidence were indeed preserved and are available for review to shed light on the relevant events and communications. Hebb himself has nine volumes of emails. He consistently referred to thousands of emails but has not pointed to one gap or change in tone between one email exchange and another indicating that there was a correspondence between Petrovsky and Gutierrez that left Hebb out. He had all the pleadings from the Hales Litigation and extensive emails where Hebb, Gutierrez and Petrovsky were all copied, so providing more concrete evidence of intentional spoliation is not unduly burdensome.

The spoliation motion is simply an argument that because Hebb was not paid the money he believes he was owed, Petrovsky and Gutierrez must have destroyed evidence showing their conspiracy not to pay him. More is required in a spoliation motion than bald unfounded accusations. The Motion to Exclude Evidence or Dismiss based on Spoliation is denied.

B. <u>Motion to Exclude Exhibits, Strike Claim and Order Directing Compliance with Pretrial Order</u>

Two significant problems developed related to compliance with the Pretrial Orders. The first was that there was a misrepresentation in the proof of service as to when and how exhibits were sent. The second was that all exhibits to be used at trial were not sent when they should have been, or even in later attempts to send them. The sequence of events was detailed in declarations filed before the October 4th hearing and supplemented by testimony at the hearing.

Hebb explained that he needed to leave his office early on August 30, 2013, the Friday before the Labor Day weekend, but that he had left the exhibits with instructions to some assistants. An assistant who has worked for him for 3 to 4 years was to finish the printing, copying and organizing of the documents and another temporary paralegal was to assist her and mail the package. Hebb states that his assistant, Ann Paul, turned over the exhibits to the temporary paralegal Ovidio Lopez. Mr. Lopez stated in his Declaration that after Hebb left town on August 30, 2013, he was asked to drop off an Overnite Express package, but that he put the package in the FedEx box instead. The Proof of Service was electronically signed by John Hebb and stated that "On 8/30/13 CREDITOR'S EXHIBIT LIST AND NOTICE RE DISPOSITION OF EXHIBITS; LIST OF EXHIBITS AND EXHIBIT COPIES RE HEARING ON PRETRIAL MOTIONS AND TRIAL SET FOR 10/4/13 was served on Steve Krause, counsel for debtor, via

Overnite courier service for delivery next business day." Proof of Service of Creditor's Exhibit List and Notice re Disposition of Exhibits, bankr.doc. no. 299. It appears, however, that the package sat in the FedEx box until Tuesday, September 3, 2013, the day after Labor Day, when FedEx relayed the package to Norco Overnite who then delivered it to Krause on Thursday, September 5, 2013. Hebb also testified that the paralegal put the exhibit package that was to be sent by "Norco" in a drop box for FedEx and conducted his own experiment with another package to demonstrate how this could happen. Declaration of John Hebb, 1:22-26 (bankr. doc. no. 303). On October 4, 2013, Hebb did not bring any witnesses to testify about the mailing of the exhibits, so any declarations other than his were not cross examined.

Hebb stated that he does not know precisely what was sent in this package on August 30 and had not done an analysis of what was sent. The documents sent on August 30 were not numbered, and a duplicate copy was not kept at his office. Hebb has no idea if they were stapled or how they were put together. He states that the following week, he sent copies of five documents again that he was not sure were sent in the first package "just in case."

On September 4, 2013, Krause filed an "Objection to Hebb's Proof of Service of Document and Failure to Comply with Court's Scheduling Order," stating that he had not received any documents whatsoever, and called Hebb's office and left a voicemail message. See bankr.doc. no. 300. The Court then issued its Order on September 5, 2013, stating, "Order Directing Parties to Comply with the Pre-Trial Scheduling Order and Notice of Potential Sanctions." See ad.pro.doc. no. 86. On September 6, 2013, Hebb filed a notice stating he did respond to Krause and had assured the package was finally delivered on September 5, 2013. See bankr.doc. no. 301. Hebb also complains about a lack of cooperation by Krause in straightening out the mishap. He also then sent another numbered exhibit set. A hearing was held on September 26, 2013, to determine whether all exhibits had finally been exchanged.

Krause states that he had hired an extra paralegal in preparation for the timely receipt of Hebb's exhibits. In addition, because of the confusion and disorganization of Hebb's exhibits, Krause states that he had to review three different sets of purported exhibits, file declarations and responses to the Court's inquiries, and attend two unnecessary hearings. Krause contends that the first set of exhibits received on September 5, 2013, was not marked and did not contain an exhibit register. Debtor's Pre-trial Motion for Evidentiary Sanctions, 5:8-11. The second set of exhibits that Krause received on September 11, 2013 included a list of 67 exhibits, but only 10 incomplete exhibits were included, and it was unclear how many pages were supposed to be part

each exhibit. Id. at 5:11-21. Krause states that the third set of exhibits provided to him at the September 26, 2013 hearing still does not have all of the exhibits listed on the register and some of the exhibits are irrelevant. Supplemental Declaration of Krause in Support of Motion to Exclude Documents, 3:23 – 5:10.

      1.    *Sanction Requirements*

Under Federal Rule of Bankruptcy Procedure ("FRBP") 9011, an attorney's representations to the Court are certifying that, to "the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

> **(1)** it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> …
> **(3)** the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;
> …

Federal Rule of Civil Procedure 16(f) and 11 U.S.C. §105(a), (d) also empower bankruptcy courts to impose sanctions upon parties who fail to comply with a scheduling order. Prior to imposing sanctions, the Court should consider (1) whether the party being sanctioned had ample warning of his misconduct, (2) the level of severity of the sanctions, (3) the adequacy of other sanctioning methods, and (4) whether the opposing party suffered any prejudice. In re Rubin, 769 F.2d 611, 616 (9th Cir. 1985). Dismissal and default are the harshest of all sanctions allowed under Federal Rule for Civil Procedure 37(b), which is applicable here under Federal Rule of Bankruptcy Procedure 7037, and ought be imposed only after all other options are exhausted. See also In re Hercules Enterprises, Inc., 387 F.3d 1024 (9th Cir. 2004) ($20,883 ordered to compensate Trustee as the result of misconduct and repeated failure to comply); In re Rubin, 769 F.2d 611, 612-614 (9th Cir. 1985) (dismissal of answer to petition for involuntary bankruptcy too severe a sanction for repeatedly postponed depositions and delivery of disorganized boxes of documents, but lesser sanction allowed). A pretrial order is "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril," and failure to show good cause or extraordinary circumstances for violations of pretrial orders may result in appropriate sanctions. Johnson v. Mammoth Recreations. 975 F.2d 604, 609 (9th Cir. 1992), *quoting* Gestetner Corp. v. Case Equip. Co., 108 F.R.D. 138, 141 (D.Me., 1985).

Such orders are necessary to manage cases effectively, and deadlines must be taken seriously. Wong v. Regents of the Univ. of Cal., 410 F.3d 1052, 1060 (9th Cir. 2005).

        *2.     Sanctions Warranted*

Turning first to the allegation of a false proof of service, the evidence demonstrated that Hebb's representation was factually incorrect as to (1) what was sent; (2) when it was mailed; and (3) how it was mailed. As Hebb was *en route* to Florida at the time the facts attested to in the proof of service occurred, he had no personal knowledge, and thus his signature on the proof of service was incorrect and improper. While this aspect of the proof of service does not appear to be intentional, it was not excusable. First, these mistakes would not have been made if Hebb had taken his duties to the court and opposing counsel seriously, and, second, regardless of how and when the exhibits were sent, they were never done properly.

        a.     "Mistakes Happen" Excuse

Hebb argues that such mistakes sometimes happen, that Debtor even sent over exhibits with missing pages, and that Ateco's counsel has been unreasonable in not working with these minor mistakes. He explains that he had to travel unexpectedly to Florida on Friday, August 30, 2013, in advance of a planned vacation to Ohio the following week. While such excuses are valid in some situations, the record does not support such a whitewash of this series of events here. Hebb has protested being in this Court at length in nearly every hearing for three years, usually when the matter is not relevant. He has known at the very least since late 2012 that he would need to provide the particular evidence in support of his fraudulent inducement claim. He had most of this year to cull the actual exhibits he needed in support of his claim.

It is clear from Hebb's entreaties in the Emergency Motion that he was attempting to "avoid extensive preparation costs, efforts and time." Emergency Stay Motion, 4:15-19; 5:1-6. Such admissions, not made to this Court, lead the Court to draw the reasonable inference that Hebb had not yet begun expending said costs and effort to compile the voluminous exhibit books when he was required to under the Pretrial Orders – exhibits that, by Hebb's own admissions, contain somewhere around 10,000 pages. In the end, these mistakes were made because Hebb left a critical task to the very last minute when he had years to gather the evidence that would prove his claim, and ample direction by the Court on how to properly compile the exhibit books in accordance with the Local Bankruptcy Rules. He then failed to adequately supervise staff so

that the opposing party was not able to timely prepare for trial, and the Court was required to waste a half day in sorting through the mess he created and continue the trial so that Debtor would not be prejudiced. With this record, Hebb's "mistakes happen" defense is unavailing.

### b. Failure to Follow Pretrial Orders

The time and effort it has taken to simply get a coherent pretrial order done and a clear set of exhibits to be used at trial has been truly extraordinary. Local Rule 7016-1(b) details every step of a pretrial order; the Court explained how to do the pretrial order (numerous times); and no less than six hearings were held to review the disputes related to the pretrial order and exhibits. Hebb ignored repeated admonishments in the pretrial hearings that each and every exhibit needed to be individually identified, numbered and turned over to Debtor. He knew that wholesale dumping of thousands of pages of emails would not be permitted. See Order re Filing of Pleadings, Papers, Evidence and Other Documents related to Motion for Summary Judgment (bankr.doc. no. 201, August 17, 2012). Despite this, Hebb still has not identified what emails in the nine volumes of printed emails he wishes to introduce at trial. He has left gaps in Exhibit numbers 7, 11, 14, 20, and 58 in his exhibit books based on what he thinks he would have presented, had there been no spoliation, further confusing what exhibits he is actually introducing.

Hebb claims that the delay does not prejudice Ateco because he turned over these emails previously to Krause. Krause denies he ever received them. Hebb has shown that Ateco's prior counsel received the emails in 2009. It appears Krause never obtained these files from prior counsel or Hebb, although some emails must have been in the files Krause had as Krause did not dispute Hebb's written argument that some are included as part of Ateco's trial exhibits. The possession of the nine-volume set has never been the issue, however, as specific items within the set were to be identified where relevant.

Even if Krause should have obtained this nine-volume set from prior counsel, there has simply been zero compliance with the Court's Pre-trial Orders with respect to Exhibit 1. Debtor still does not know which of the thousands of pages will be at issue at trial. As other exhibits in the exhibit book seem to contain partial threads of emails, or the context of the communication is not clear without reference to other events, documents or pleadings, a random reference to a single email communication in a six year time span is a classic "trial by ambush." Debtor should

have some greater information before trial commences of what in a six year time span he should review and prepare for.

Hebb has argued that he simply wants to "sample" the emails, although he has never formally made such a motion or explained what he means by that. Sampling may, under certain circumstances and for certain purposes, be an appropriate discovery tool, but there must be specifically approved methods to arrange for ways to produce electronically stored documents in an effort "to facilitate, not hinder, the usefulness of the information produced," City of Colton v. American Promotional Events, Inc., 277 F.R.D. 578, 586 (C.D. Cal. 2011). No coherent alternative approaches to voluminous evidence have been properly requested or authorized here.

Hebb's theory of the case seems to be that the nine volumes show Ateco knew how much work he was doing. It was time to point to exactly what communication or action fraudulently induced him to continue representation. The fact that he did work, and what work was done is only relevant if, in fact, he was fraudulently induced to do that work. A voluminous undifferentiated "document dump" is sanctionable even when done long before trial as part of discovery, see e.g., Rothman v. Emory University, 123 F.3d 446, 455 (7th Cir. 1997), and this is certainly not permitted instead as an unidentified mass of exhibits shortly before trial.

        c.      Remedial Measures

Ateco's motion to dismiss Hebb's claim in its entirety is certainly understandable and possibly warranted after such repeated delays. A trial on the merits, however, will better serve justice. "A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." See FRBP 9011. Because dismissal is such a severe punishment, and in light of Rubin's admonishment that a judge must first clearly warn that dismissal is being considered, a lesser range of sanctions will be imposed in an effort to remedy the delay, confusion and cost caused by Hebb's failure to properly prepare for trial. Hebb is on notice that any further violation of the pretrial order, the Federal Rules of Bankruptcy Procedure or the district's local bankruptcy rules will result in dismissal of his claim in its entirety. See, *e.g.*, Malone v. U.S. Postal Service, 833 F.2d 128 (9th Cir. 1987) (lack of preparation for trial and noncompliance with pretrial order justified dismissal of complaint with prejudice.)

Hebb may not introduce "Exhibit 1" or any pieces of it at trial either in his case in chief or as impeachment because of the violation of the Pretrial Orders. The manner in which they are

-17-

identified in the exhibit list also requires exclusion under F.R. Evid 403. They are confusing and do not provide specific probative value in comparison to the deluge of material sought to be introduced. Hamling v. United States, 418 U.S. 87, 127 (1974). If any of the remaining exhibits in the current exhibit list are items culled from these volumes, they may be used at trial as they have previously been independently identified and numbered.

All testimony other than that of adverse witnesses shall be submitted by declaration with exhibits referred to by exhibit number and page. This schedule was already detailed at the hearing on these pretrial evidence issues.

Hebb is ordered to pay Ateco's attorney fees from August 30 through and including the hearing on October 4, 2013 because of all the unnecessary work caused by his failure to prepare properly for the trial. While fees might not have been imposed had this violation occurred in isolation, it was the final straw in a long and tortured effort to resolve a very simple issue. Ateco's counsel, Krause, has submitted a declaration detailing fees of $11,637, which are reasonable for the work performed and are awarded in their entirety. Before the trial commences on November 1, 2013, Hebb is to pay at least $500 to Krause or $100 will be added to the total owed. The remainder is payable in full by December 15, 2013. If the complete amount is not paid, $100 per month will be added to the amount due until paid in full.

These sanctions remedy the failure to adequately prepare for trial and follow court orders.

### III. Conclusion

The Motion for Sanctions is granted in part, as detailed above. The findings with respect to the Order to Show Cause are the same as those for Ateco's sanctions motion. The Spoliation Motion is denied. Trial will commence at 9:00 a.m. on Friday, Nov. 1, 2013, with solely the exhibits and witnesses detailed in the pre-trial order. Both counsel are ordered to meet and confer before 9:00 a.m. on Friday as to any outstanding issues either may have before trial.

Date: October 28, 2013

Maureen A. Tighe
United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled MEMORANDUM OF DECISION RE: (1) HEBB SPOLIATION MOTION; (2) ATECO MOTION TO EXCLUDE HEBB DOCUMENTS; AND (3) COURT'S ORDER TO SHOW CAUSE RE PRETRIAL COMPLIANCE was entered on the date indicated as AEntered@ on the first page of this judgment or order and will be served in the manner stated below:

**1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** B Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of October 28, 2013, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

- John L Hebb     JOHNFLHEBB@aol.com
- Steven J Krause     stevenjkrause@yahoo.com, sjkbknotices@gmail.com
- United States Trustee (SV)     ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

☐ Service information continued on attached page

**3. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an AEntered@ stamp, the party lodging the judgment or order will serve a complete copy bearing an AEntered@ stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

☐ Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9021-1.1.NOTICE.ENTERED.ORDER**